## UNITED TECHNOLOGIES CORPORATION/PRATT AND WHITNEY AIRCRAFT DIVISION v. COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES ET AL.
### (AC 21740)

Mihalakos, Bishop and Daly, Js.[1]

---

[1] This appeal was argued before a panel comprised of Judges Mihalakos, Bishop and Daly. Although Judge Daly agreed with the other judges regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a written decision.

Argued May 8—officially released September 10, 2002

*Daniel A. Schwartz*, with whom, on the brief, were *Albert Zakarian* and *Meredith G. Diette*, for the appellant (plaintiff).

*Alix Simonetti*, assistant commission counsel II, with whom was *Philip A. Murphy, Jr.*, commission counsel, for the appellee (named defendant).

*Philip L. Steele*, for the appellee (defendant Gale Nestor).

*Opinion*

MIHALAKOS, J. In this gender discrimination case, the plaintiff employer, United Technologies Corporation, Pratt and Whitney Aircraft Division (Pratt & Whitney), appeals from the judgment of the trial court, which dismissed Pratt & Whitney's administrative appeal from an order and award by a hearing officer for the defendant commission on human rights and opportunities (commission) in favor of the defendant employee, Gale Nestor. On appeal, Pratt & Whitney claims that the court improperly (1) affirmed the commission's clearly erroneous factual findings, and (2) concluded (a) that substantial evidence demonstrated that Nestor and a male coworker were similarly situated, (b) that the commission properly admitted and relied on evidence of past discrimination, (c) that sufficient evidence existed to show gender discrimination and (d) that the decision should be affirmed despite the lack of discriminatory intent or motive on the part of Pratt & Whitney or any of its employees. We affirm the judgment of the trial court.

The relevant facts of this matter, as found by the commission's hearing officer and later adopted by the court, may be summarized as follows. In November, 1973, Pratt & Whitney hired Nestor to work in its East

Hartford facility as an engine lathe operator, labor grade eight. During the course of the next decade, Nestor received three promotions and became one of sixteen tool inspectors B, labor grade four. In 1984 and 1985, fourteen male inspectors were promoted, leaving behind only one male inspector who was out of work on a disability leave and Nestor, despite the fact that she demonstrated or exceeded the requisite fitness, ability and seniority necessary for promotion. In 1991, a job reclassification "promoted" Nestor, but left her at effectively the same level in relation to the inspectors from her original group.

Nestor first met an employee named Benjamin L. Elmore in 1979. In 1988, they were assigned to work in the same area. In 1990, Nestor began to have problems with Elmore because he frequently made comments about her body, rear end, breasts and bra. That year, Nestor reported three incidents in which Elmore had directed lewd gestures and comments toward her. Realizing that the problems between her and Elmore were known commonly, Nestor sought a transfer both within and outside of her assigned department. Nestor's requests were ignored until her supervisor, Joseph E. Burns, Jr., told her he would implement a transfer if she accepted a demotion. Nestor declined.

At work, Burns treated women differently from men. Generally, he would not engage in casual conversation with female employees, but would do so with male employees. Burns would assign work to female employees, but would not discuss it with them even when problems arose. Moreover, Burns' attitude toward women was typical at Pratt & Whitney, in which a "male atmosphere" was pervasive. For example, Burns ignored Nestor's gender discrimination complaints because he did not view them as such. He also observed dirty jokes and lewd pictures circulated around the

department. In fact, most males at Pratt & Whitney had a standard practice of circulating those items.

On July 27, 1992, another incident took place between Nestor and Elmore in front of the department's time clock. At 11:45 p.m. that night, Nestor left her station to punch out her work for the night. When she arrived at the time clock, Elmore and another employee, Richard W. Grous, were socializing. Elmore was searching for his job card in the card racks next to the time clock. At the same time, Grous was attempting to punch his card at the time clock. Nestor stood behind Grous and waited for him to complete his transaction. When Grous finished and walked away from the time clock, Elmore was still searching for his card. It was not uncommon for one employee to punch out while another was preparing to do so. Seeing that Elmore was not yet prepared, Nestor approached the time clock and began punching out.

When Elmore noticed Nestor at the clock, he said, "[O]h, no you don't," and approached the clock. He then reached across the front of Nestor, pushed up against her and pushed her hand away from the clock, which effectively prevented her from punching out. Elmore continued to push against Nestor as she tried to reach the clock, again blocking her hand from swiping her card. Elmore also pushed the "cancel" button on the clock, which canceled Nestor's transaction. Elmore repeated that behavior and kept his finger on the "cancel" button. Nestor tried to push his finger away from the button.

Nestor held her ground as Elmore continued to press his body against her and tried to push himself between her and the clock. Nestor felt offended and uncomfortable with the close contact, which included Elmore pressing his torso against her body and pressing against her chest. Nestor shouted, "[G]et away, you pervert.

Get off me, you pervert." Elmore stepped back, but then reinitiated the pushing with even more contact than before. Grous, who was still nearby, saw Elmore and Nestor pushing against each other. He heard Nestor say, "watch where you're touching." Grous then reported the ongoing incident to Burns.

Meanwhile, Nestor yelled again at Elmore, but he did not move away. Nestor used her elbow and kicked her leg behind her to try to break off the physical contact with Elmore. After Grous reported the incident, Burns observed Elmore and Nestor trying to get to the time clock at the same time. From the time clock, Nestor looked up toward Burns' office and saw him, but realized that he could not fully see the time clock area. Burns then went to the time clock, and Elmore broke off physical contact with Nestor and moved to one side.

Burns stood in front of the time clock and told Nestor, "Stop it. It's not worth losing your job over. You're acting like kids." When Nestor pointed out that Burns was addressing only her, Burns stepped back and included Elmore in the discussion. Burns then sent Nestor and Elmore to his office. Later, he sent Nestor and then Elmore to punch out. Burns then wrote a letter about the incident to his manager, Martin R. Berr.

The next day, Burns discussed the matter with Berr, and Nestor was transferred to another section of the department the following day. Elmore remained in his position for about one day but then also was transferred. After the transfer, Nestor tried to tell Burns that she only was defending herself during the incident, but he refused to talk to her. Nevertheless, Burns willingly spoke about the incident with Elmore. Elmore claimed that he was not defending himself but was simply preventing Nestor from clocking out before him.

An internal investigation followed in which numerous statements were taken from various employees who

witnessed or were involved in the incident. The investigation was riddled, however, with faulty procedures such as not properly recording the substance of what witnesses told investigators despite being advised by witnesses that this was the case. Investigators also would not allow employees to draft their own statements. A report based on the investigation was issued to Burns and Berr, who met to review it. Although Burns did not know who started the incident, he and Berr decided that Nestor had been fighting, which was against Pratt & Whitney's rules, and that she had been the aggressor. Burns offered no defense for Nestor when asked for one by Berr and recommended to Berr that her employment be terminated. He also recommended that Elmore be retained. Berr decided to accept Burns' recommendation. Consequently, on September 2, 1992, Burns informed Nestor that her employment had been terminated, and he escorted her to the security guard's station outside the plant. Elmore, on the other hand, received only a one day suspension. Following a grievance procedure initiated through her union, Nestor returned to work on February 26, 1993.

Prior to returning to work, however, Nestor filed a timely charge of discrimination with the commission. In her complaint, Nestor alleged that she had been terminated from her position with Pratt & Whitney because of her gender in violation of General Statutes §§ 46a-58 (a)[2] and 46a-60 (a) (1),[3] and Title VII of the Civil

[2] General Statutes § 46a-58 (a) provides: "It shall be a discriminatory practice in violation of this section for any person to subject, or cause to be subjected, any other person to the deprivation of any rights, privileges or immunities, secured or protected by the constitution or laws of this state or of the United States, on account of religion, national origin, alienage, color, race, sex, blindness or physical disability."

[3] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation

Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended. Nestor also alleged that she suffered "ongoing harassment" from Elmore between August, 1990, and April, 1991. On June 1, 1998, Pratt & Whitney filed a motion in limine to preclude evidence of that and other claims of harassment, which it deemed time barred, from the commission's public hearings regarding Nestor's discrimination claim. That motion was denied.

On September 20, 1999, the commission issued a memorandum of decision and order, which concluded that Nestor had established a prima facie case of discrimination. In other words, the commission concluded that Nestor was a member of a protected class, i.e., a female, who was qualified for her position at the time she was terminated for allegedly violating a work rule, and that a similarly situated employee who was not in the protected class, i.e., a male, had been treated differently. The commission also concluded that Nestor had met her burden of demonstrating that Pratt & Whitney's proffered nondiscriminatory reason for the termination, namely, that the actions of the two employees were different and required different treatment, merely was a pretext for the disparate treatment of Nestor on the basis of her gender. The commission specifically noted that Pratt & Whitney's investigation was not credible due to the manner in which it was made. In making that point, the commission recognized that employers are sophisticated enough to use investigations, such as the one here, to shield their true animus toward an employee. The commission also noted that the evidence of prior actions of Pratt & Whitney and its employees was admissible and useful, despite the fact that the prior actions no longer were actionable as discrimination claims unto themselves, because that evidence

or in terms, conditions or privileges of employment because of the individual's . . . sex . . . ."

clearly demonstrated that Nestor's termination more probably was the result of discrimination.

Ultimately, the commission ruled that Pratt & Whitney had been motivated to terminate Nestor's employment on the improper basis of gender bias in violation of § 46a-60 (a) (1). The commission ordered Pratt & Whitney to reinstate Nestor, to allow her to participate in various retirement programs and to remit to her a total back pay award in the amount of $12,126 plus interest at 10 percent from September 2, 1992. On November 5, 1999, Pratt & Whitney initiated an administrative appeal to the Superior Court. Pratt & Whitney challenged the commission's conclusions that Nestor and Elmore were similarly situated and that there was substantial evidence of pretext and gender bias. Pratt & Whitney also argued that the commission improperly admitted and relied on evidence of harassment prior to the time clock incident.

On February 20, 2001, the court affirmed the commission's order and award. In a thorough memorandum of decision in which the court relied on federal law for guidance relative to employment discrimination, the court concluded that Nestor and Elmore were similarly situated because they were both inspectors who had the same supervisor and were subject to the same standards for performance evaluation and discipline, and because they equally were at fault for the time clock incident. The court next concluded that substantial evidence of gender bias and pretext did exist. First, the court noted the uneven enforcement of Pratt & Whitney's rules against similarly situated employees. It cited evidence of a flawed investigation. Next, the court discussed Burns' defective summation of the time clock incident to Berr, which caused Berr and, therefore, Pratt & Whitney's decision to terminate Nestor's employment to be tainted with Burns' discriminatory motive. The court concluded that the introduction of

and reliance on the challenged evidence was not an abuse of discretion. This appeal followed. Additional relevant facts and procedural history will be provided as necessary.

First, we note the analysis that must be undertaken to determine whether discrimination has occurred. "When a plaintiff cannot prove directly the reasons that motivated an employment decision . . . a plaintiff may establish a prima facie case of discrimination through inference by presenting facts [that are] sufficient to remove the most likely bona fide reasons for an employment action. . . . From a showing that an employment decision was not made for legitimate reasons, a fact finder may infer that the decision was made for illegitimate reasons." (Citation omitted; internal quotation marks omitted.) *Ann Howard's Apricots Restaurant, Inc.* v. *Commission on Human Rights & Opportunities*, 237 Conn. 209, 224–25, 676 A.2d 844 (1996).

"If the plaintiff meets this initial burden, the burden then shifts to the defendant to rebut the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. . . . If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. . . . The plaintiff then must satisfy her burden of persuading the factfinder that she was the victim of discrimination either directly by persuading the court [or jury] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." (Citations omitted; internal quotation marks omitted.) *Erisoty* v. *Merrow Machine Co.*, 34 Conn. App. 708, 710–11, 643 A.2d 898, cert. denied, 231 Conn. 908, 648 A.2d 151 (1994).

We also emphasize at the outset that our review of the court's judgment upholding the commission's deci-

sion is narrow and has the same scope as the trial court's review in this case. "We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [Constrained by a narrow scope of review] [n]either this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.)

*Elf* v. *Dept. of Public Health*, 66 Conn. App. 410, 417–19, 784 A.2d 979 (2001). Within the framework of those principles, we now review Pratt & Whitney's claims, which essentially challenge each phase of the previously presented analysis.

I

Pratt & Whitney first claims that the court improperly affirmed the commission's clearly erroneous factual findings.[4] Specifically, Pratt & Whitney asserts that the commission distorted and ignored certain testimony, made arbitrary findings, and overlooked damaging testimony from and documentary evidence against Nestor about her role in the July 27, 1992 incident. Further, Pratt & Whitney contends that the commission's hearing officer improperly adopted, almost verbatim, more than 100 findings of fact that had been proposed to the hearing officer by the commission. Consequently, Pratt & Whitney requests that this court review the record de novo and substitute its factual findings for those that were adopted by the commission's hearing officer and affirmed by the trial court. That claim is without merit.

Despite the defendant's framing of the issue, we have noted previously that the substantial evidence rule, and not the clearly erroneous standard, governs our review of an agency's findings of fact. See id. Here, however, we need not undertake such a review. "It is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on

---

[4] Pratt & Whitney claims also that the court improperly made factual findings. We note, however, that the court's summary of the commission's factual findings constitutes nothing more than the use of a common time and space saving tool of writing. Rather than making new findings of fact, the court was reiterating those already made by the commission and evaluating them under the applicable law in relation to the commission's conclusions. We conclude, therefore, that this claim is meritless and warrants no further discussion.

an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Citations omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 61 Conn. App. 700, 713, 767 A.2d 756 (2001).

Pratt & Whitney did not challenge the findings of fact in its initial appeal to the trial court. Rather, it challenged the commission's legal conclusions and an evidentiary ruling. Further, although Pratt & Whitney did raise a concern over the almost verbatim adoption of more than 100 proposed findings of fact to support its claim on appeal that the commission's conclusions were incorrect, that matter was not raised before the court as a separate and specific issue. We also have stated that "[a]ppellate pursuit of so large a number of issues forecloses the opportunity for a fully reasoned discussion of pivotal substantive concerns [by the appellant]. A shotgun approach does a disservice both to this court and to the party on whose behalf it is presented." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 65 Conn. App. 210, 211, 782 A.2d 200, cert. denied, 258 Conn. 943, 786 A.2d 430 (2001). In challenging the adoption of so many findings, Pratt & Whitney has pursued just such an approach. Moreover, our Supreme Court consistently has held that "de novo review is inappropriate for review of the factual findings of administrative agencies." *Adriani* v. *Commission on Human Rights & Opportunities*, 228 Conn. 545, 551, 636 A.2d 1360 (1994). Accordingly, we decline to review the claim.

II

Pratt & Whitney also challenges certain conclusions reached by the court in its review of the commission's decision on certain questions of law. For such issues,

we employ anew the standard used by a trial court to review an agency's conclusions: "[A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *MacDermid, Inc.* v. *Dept. of Environmental Protection*, 257 Conn. 128, 137, 778 A.2d 7 (2001). We are mindful, however, that "[n]ot only is a reviewing court prohibited from substituting its judgment for that of the commission, but the decision of the commission must be sustained if an examination of the record discloses evidence that supports any one of the commission's reasons. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the [commission] supports the decision reached." (Internal quotation marks omitted.) *Pinchbeck* v. *Planning & Zoning Commission*, 69 Conn. App. 796, 800, 796 A.2d 1208 (2002). We now address each of Pratt & Whitney's challenges seriatim.

A

First, Pratt & Whitney claims that the court wrongly concluded that the commission properly determined that Nestor and Elmore were similarly situated. Thus, Pratt & Whitney contends that Nestor failed to prove one of four requirements necessary to establish a prima facie case of employment discrimination. We disagree.

To establish a prima facie claim of disparate treatment under a facially neutral employment policy, it is necessary for the employee to produce evidence of four elements: (1) she was a member of a protected class;

(2) she was qualified for her position; (3) she was discharged; and (4) the termination occurred under circumstances giving rise to an inference of discrimination. *Shumway* v. *United Parcel Service, Inc.*, 118 F.3d 60, 63 (2d Cir. 1997); *Craine* v. *Trinity College*, 259 Conn. 625, 638, 791 A.2d 518 (2002). To meet the fourth prong of that prima facie showing, a female employee must establish that "she was treated less favorably than comparable male employees in circumstances from which a gender-based motive could be inferred." (Internal quotation marks omitted.) *Luciano* v. *Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997). In other words, the female employee must show that in all material respects, she was similarly situated to a male employee, but was treated differently on the basis of her gender. *Shumway* v. *United Parcel Service, Inc.*, supra, 64. For example, an employee could show that she and a male employee "reported to the same supervisor . . . [were] subject to the same standards governing performance evaluation and discipline, and . . . engaged in [similar] conduct . . . without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." *Mazzella* v. *RCA Global Communications, Inc.*, 642 F. Sup. 1531, 1547 (S.D.N.Y. 1986), aff'd, 814 F.2d 653 (2d Cir. 1987). It is important to note, however, that being similarly situated in all material respects does not require one to demonstrate "disparate treatment of an identically situated employee." *McGuinness* v. *Lincoln Hall*, 263 F.2d 49, 54 (2d Cir. 2001). Employees need show only "a situation sufficiently similar to [their own] to support at least a minimal inference that the difference of treatment may be attributable to discrimination." Id.

We note that Pratt & Whitney does not dispute that Nestor met the first three prongs of the prima facie case. Further, as to the fourth prong, Pratt & Whitney

concedes in its principal brief that Nestor and Elmore had "the same supervisor and were subjected to the same antifighting policy."[5] Pratt & Whitney also conceded in its reply brief that it treated Nestor and Elmore differently. Thus, Pratt & Whitney essentially contends only that Nestor and Elmore were not similarly situated because their conduct during the time clock incident was neither of comparable seriousness nor similar in all material respects. From the facts, however, the commission reasonably and logically could have concluded to the contrary.

We conclude that the record supports the commission's determination, and, thereby, the court's conclusion. The facts illustrate that in the July 27, 1992 time clock incident, both Nestor and Elmore pushed against each other and that when Elmore pushed harder, Nestor tried harder to get him away from her. Nestor and Elmore were disciplined quite differently for that similar conduct, with the former being terminated from her employment while the latter was issued only a one day suspension. On those facts, in conjunction with the concessions regarding the relative status of each employee, we conclude that the commission's conclusion that Nestor and Elmore were similarly situated was made reasonably, logically and through a correct application of the law to the facts. Accordingly, Pratt & Whitney's claim is unavailing.

B

Pratt & Whitney also claims that the court improperly concluded that the commission properly admitted and relied on evidence of past discrimination by Elmore

[5] We further note that the established facts indicate that Nestor and Elmore essentially rose through the ranks of Pratt & Whitney together for many years and were assigned to work in the same area of their department. The facts also show that Nestor's job related fitness, ability and seniority were equivalent to that of Elmore at all relevant times.

against Nestor. Pratt & Whitney argues that the evidence was time barred and, thus, not actionable alone. In essence, Pratt & Whitney claims that because the challenged evidence could not support independent discrimination claims due to the passing of the statute of limitations, the evidence improperly was admitted in relation to the allegation that underlies this case. Further, Pratt & Whitney asserts that even if the evidence were relevant, it should not have been admitted because it was highly prejudicial. In accordance with a recent decision of the United States Supreme Court, we are not persuaded.

The following is a more detailed summary of the evidence that the commission admitted, and subsequently found as fact, which is relevant to our disposition of Pratt & Whitney's claim. In 1990, Nestor reported three incidents in which Elmore had directed lewd comments or gestures toward her. In one incident, Elmore made lewd gestures toward Nestor when she went to Burns to complain about his presence in the computer room, which was not work related. When Nestor reported the lewd gesturing to Burns, he appeared to handle the incident by making a telephone call. No further action took place, however, in regard to the incident. In the next two months, two more incidents involving lewd gestures and comments occurred between Nestor and Elmore. Nestor reported both incidents. After reporting the latter incident, Nestor returned to her station and found a vulgar cartoon on her toolbox, which she also reported. Nestor then avoided all contact with Elmore.

In reviewing the court's conclusion that the commission properly admitted the challenged evidence, we again employ the standard of review used by the trial court. That standard of review recognizes that "[a]dministrative tribunals are not strictly bound by the rules of evidence . . . so long as the evidence is reliable and

probative." (Internal quotation marks omitted.) *Funderburk* v. *Commissioner of Motor Vehicles*, 68 Conn. App. 655, 659, 792 A.2d 175 (2002). Thus, on appeal, "[t]he plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) Id.

We are mindful that "[e]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Nims*, 70 Conn. App. 378, 389, 797 A.2d 1174, cert. denied, 261 Conn. 924, 806 A.2d 1056 (2002). Further, "[a]lthough relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted." (Internal quotation marks omitted.) Id., 390–91.

In a recent decision interpreting Title VII of the Civil Rights Act of 1964, the United States Supreme Court recognized that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. . . . The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges

addressing those acts are themselves timely filed." *National Railroad Passenger Corp.* v. *Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002). The court also concluded that a statute of limitations that may bar a claim that is based on prior discriminatory acts does not bar an employee "from using the prior acts as background evidence in support of a timely claim." Id. In keeping with the guidance provided in *Morgan*, we apply that principle.

Thus, the question is not whether prior acts may be admitted into evidence in this context, but rather, whether the challenged evidence was relevant and probative without being unduly prejudicial. Upon careful review of the evidence, we conclude, as did the commission and the court, that it was admissible. Along with other evidence that is not challenged,[6] the evidence related to Elmore's prior acts made it more probable that Pratt & Whitney's decision to terminate Nestor's employment was discriminatory in nature. We also conclude that the admission of the evidence did not create undue prejudice. The fact that the evidence had an adverse effect on Pratt & Whitney does not mean that

---

[6] Pratt & Whitney supports its claim that the commission improperly concluded, exclusively on the basis of Elmore's prior acts, that the termination of Nestor's employment was discriminatory by citing the commission's statement that Pratt & Whitney's treatment of Nestor "as far back as 1990, *inter alia*, assists in and compels this conclusion." (Emphasis in original.) We cannot agree. Pratt & Whitney does not challenge other evidence of prior acts that the commission may have been referencing, such as evidence that Nestor, although qualified in all ways, was not promoted when fourteen male inspectors were promoted. Similarly, Pratt & Whitney does not challenge evidence that Burns ignored Nestor's written complaints of harassment and discrimination, refused to train Nestor, and told her she was "too large and awkward" to receive training. Further, it is clear from the commission's other statements that its conclusion centered on the uneven application along gender lines of Pratt & Whitney's policy against fighting. Finally, given our conclusion that the challenged evidence was admitted properly, along with the guidance provided by the United States Supreme Court, it was not improper for the commission to consider the prior acts in evidence when determining whether the termination was discriminatory.

it was overly prejudicial, especially when weighed against its probative value. Accordingly, the commission did not abuse its discretion when it admitted the challenged evidence, as it provided appropriate background in the consideration of Nestor's timely claim regarding the discrete act of her termination from employment.

## C

Pratt & Whitney next claims that the court improperly affirmed the commission's decision despite insufficient evidence of gender discrimination. More specifically, Pratt & Whitney claims that Nestor did not prove that its nondiscriminatory reason for her termination from employment was pretextual or that the real reason for her discharge was gender discrimination. We do not agree.

We have concluded in part II A that Nestor proved her prima facie case. As such, Pratt & Whitney had the burden of rebutting the presumption of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. See *Erisoty* v. *Merrow Machine Co.*, supra, 34 Conn. App. 710–11. Pratt & Whitney produced evidence that it terminated Nestor's employment but retained Elmore because their conduct during the time clock incident was different and, thus, should have been treated differently. Having carried its burden of production, Pratt & Whitney succeeded in rebutting the presumption of discrimination that was raised by the prima facie case. Nestor then had to satisfy her burden of persuading the fact finder that she was the victim of discrimination either directly, by persuading the fact finder that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation was unworthy of credence. See id., 711.

The United States Court of Appeals for the Second Circuit has ruled that "evidence constituting a prima facie case prior to the employer's proffer of a reason, coupled with the error or falsity of the employer's proffered reason may—or may not—be sufficient to show illegal discrimination . . . ." *Fisher* v. *Vassar College*, 114 F.3d 1332, 1333 (2d Cir. 1997) (en banc). In other words, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." (Internal quotation marks omitted.) *James* v. *New York Racing Assn.*, 233 F.3d 149, 156 (2d Cir. 1997), quoting *Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Therefore, "once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given . . . the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *James* v. *New York Racing Assn.*, supra, 156.

Here, the record supports the conclusion that Pratt & Whitney's alleged legitimate reason for terminating Nestor's employment was false and that it instead engaged in impermissible gender discrimination. Although Elmore and Nestor were similarly situated and engaged in similar conduct during the time clock incident in violation of company rules, Burns recommended, without knowing who started the incident, that Nestor be fired and that Elmore be retained. That recommendation followed a faulty investigation into the incident. Further, Burns initially chastised only Nestor for her involvement in the incident and, although he willingly talked to Elmore about the incident later, he refused to hear Nestor's version.

That evidence was further supported by permissible background evidence, as we concluded in part II B. Out of the sixteen inspectors in Nestor's group, fourteen

male inspectors were promoted, leaving behind only one male inspector who was out of work on a disability leave and Nestor, despite the fact that she demonstrated or exceeded the requisite fitness, ability and seniority necessary for promotion. Nestor had numerous problems with Elmore before the time clock incident that were left virtually unaddressed by Burns. Further, Burns had a discriminatory attitude toward women in his department and allowed pornographic material to circulate there. Moreover, Burns' attitude extended to Nestor, whom he once insulted when she asked for additional training.

Considering all of the evidence, it was reasonable for the commission to infer that Pratt & Whitney's allegedly legitimate reason for treating Nestor differently was false. Further, the commission reasonably could have concluded, as it expressly did, that prohibited gender discrimination occurred. We cannot conclude, therefore, that the commission acted arbitrarily or in abuse of its discretion.

D

Pratt & Whitney claims finally that the court improperly affirmed the commission's decision despite the lack of a finding of discriminatory intent or motive on the part of Pratt & Whitney or any of its employees. That claim is without merit.

As we have stated, the commission found that Pratt & Whitney investigators, who took statements from witnesses about the time clock incident, did not allow employees to draft their own statements or to correct faults that they found in the statements that Pratt & Whitney had drafted for them. The commission also found that although Burns did not know who started the time clock incident, he and Berr decided that Nestor had been fighting, which was against Pratt & Whitney's rules, and that she had been the aggressor. Burns then

recommended to Berr that Nestor's employment be terminated but that Elmore be retained. Berr accepted that recommendation, and Burns told Nestor that her employment had been terminated. The commission concluded, on the basis of all the facts, that Pratt & Whitney had terminated Nestor's employment with a discriminatory motive that manifested itself in the flawed investigation that shielded Pratt & Whitney's true animus toward her, and in its selective and uneven enforcement of its policy. The commission further noted that despite the fact that Berr may not have intentionally discriminated against Nestor, discrimination still played a key role in the termination of her employment. The commission concluded that Pratt & Whitney discriminated against Nestor on the basis of her gender and unevenly enforced its policy by "virtue of its disparate treatment in terminating [Nestor's] employment."[7] The court agreed and stated that Pratt & Whitney had conducted a flawed investigation, enforced its rules against similarly situated employees unevenly, and allowed Burns' defective summation of the incident and his discriminatory motive to taint Berr and, therefore, to taint Pratt & Whitney's decision to terminate Nestor's employment.

Pratt & Whitney claims that those conclusions show a lack of any finding of discriminatory intent on its part and, therefore, that the court's decision to uphold the commission's decision was improper. We conclude to the contrary. Pratt & Whitney apparently has misread the conclusions of the commission and the court. Our law allows for the transfer of intent to discriminate, which was recognized by the court and the commission

---

[7] The commission expressly concluded that "this was a case of disparate treatment based upon [Nestor's] gender." Further, the commission explicitly stated that Nestor had "proved, by a preponderance of the evidence presented, that the discriminatory motive (i.e., her gender) was the factor that made the difference in [Pratt & Whitney's] decision to fire her."

in their decisions. It is true that "[w]ithout some proof of an improper motive, [a plaintiff's] case must fail." (Internal quotation marks omitted.) *Erisoty* v. *Merrow Machine Co.*, supra, 34 Conn. App. 711. Nevertheless, companies may be held liable for discrimination even where the decision-making official did not intentionally discriminate if the information used by that official in deciding to terminate a worker's employment was filtered through another employee who had a discriminatory motive. See *Jiles* v. *Ingram*, 944 F.2d 409, 413–14 (8th Cir. 1991) (discriminatory intent of employer's agents sufficient proof to hold employer responsible for discriminatory termination without intentional discrimination by final decision maker); see also *Kientzy* v. *McDonnell Douglas Corp.*, 990 F.2d 1051, 1057 (8th Cir. 1993) ("when a committee has 'acted as the conduit of [a supervisor's] prejudice—his cat's paw—the innocence of its members would not spare the company from liability' "). Moreover, § 46a-60 (a) (1) provides that neither an employer *nor its agent* may discriminate against or terminate an individual's employment on the basis of her gender. See footnote 3. Thus, the commission's conclusion that Pratt & Whitney improperly terminated Nestor's employment on the basis of gender was permissible. Moreover, after our thorough review of the record, we conclude that the commission's determination resulted from a correct application of the law to the facts found and that it could reasonably and logically follow from such facts. Accordingly, we conclude that the commission did not abuse its discretion and that the court properly affirmed its decision.

The judgment is affirmed.

In this opinion the other judges concurred.