******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

DIANE LUTH *v.* OEM CONTROLS, INC.*

Superior Court, Judicial District of Ansonia-Milford
File No. CV-17-6025657-S

Memorandum filed December 6, 2019

*Proceedings*

Memorandum of decision on defendant's motion for summary judgment. *Motion granted.*

*James V. Sabatini*, for the plaintiff.

*Jody N. Cappello* and *Sidd Sinha*, for the defendant.

*Opinion*

STEVENS, J.

## STATEMENT OF THE CASE

The plaintiff, Diane Luth, filed a two count revised complaint against the defendant, OEM Controls, Inc., on December 3, 2018, alleging gender discrimination and retaliation. The complaint alleges the following facts. The defendant hired the plaintiff in January of 1996 as a sales administrator. Throughout the plaintiff's employment, she held different titles. Her most recent position was implementation manager in the data delivery department where she made $88,000 to $92,000 annually. The plaintiff is the only female in her job position. The defendant allegedly hired Mick Lauer in October, 2015, to perform the same or substantially similar job duties as the plaintiff. The defendant allegedly pays Lauer $170,000 annually in compensation. Lauer was not the plaintiff's manager, nor was he in charge of the data delivery team. The defendant also employs Jay Monahan. Monahan shares some of the same job functions as the plaintiff, and he allegedly is paid more than the plaintiff.

When the plaintiff found out about the difference in pay, she expressed her concerns to the defendant. The defendant stated that it was going to look at all the salaries of individuals on the data delivery team. The plaintiff asked about her salary again a few months later, and she was told to not take it personally and that it was not her concern. On October 6, 2016, the plaintiff's employment with the defendant was terminated.

The first count of the plaintiff's complaint alleges gender discrimination. The plaintiff alleges that the defendant discriminated against her because of her gender by paying her unequally and by constructively discharging her. In the second count, the plaintiff's complaint alleges that the defendant retaliated against the plaintiff for complaining about the gender discrimination in the workplace and the pay disparity between men and women at the company.

Pending before the court is the defendant's motion for summary judgment filed on April 15, 2019, with a supporting memorandum of law. The plaintiff filed a memorandum in opposition to the motion for summary judgment on July 1, 2019. The defendant filed a reply memorandum to the plaintiff's opposition on July 15, 2019. The court heard oral argument on the motions on July 22, 2019. The court ordered the parties to file supplemental briefs. The plaintiff filed a supplemental opposition on July 29, 2019, and the defendant filed a reply on August 19, 2019.

## DISCUSSION

"Summary judgment is a method of resolving litiga-

tion when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *Stuart* v. *Freiberg*, 316 Conn. 809, 821, 116 A.3d 1195 (2015).

## I

## GENDER DISCRIMINATION

"With respect to employment discrimination claims, our Supreme Court has held that we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." (Internal quotation marks omitted.) *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, Superior Court, judicial district of Hartford, Docket No. CV-13-6042558 (January 26, 2015) (reprinted at 170 Conn. App. 82, 86, 153 A.3d 691), aff'd, 170 Conn. App. 79, 153 A.3d 687 (2017). "Under the [analysis set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)], the employee must first make a prima facie case of discrimination, The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision was actually motivated by illegal discriminatory bias." (Internal quotation marks omitted.) *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, supra, 87.

## A

## Prima Facie Case of Discrimination

"In order for the employee to first make a prima facie case of discrimination, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." *Feliciano* v. *Autozone, Inc.*, 316 Conn. 65, 73, 111 A.3d 453 (2015). "The burden of establishing a prima facie

case [of discrimination] is a burden of production, not a burden of proof, and therefore involves no credibility assessment by the fact finder. . . . The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in the plaintiff's favor." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 513, 43 A.3d 69 (2012).

"In addition to proffering direct evidence of discrimination with respect to the fourth prong, a litigant may present circumstantial evidence from which an inference may be drawn that similarly situated individuals were treated more favorably than she was." (Internal quotation marks omitted.) *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, supra, 170 Conn. App. 88. "To establish the fourth element of a prima facie case, [the plaintiff] must show that she was treated differently from similarly situated [employees]. To be similarly situated, the individuals with whom [the plaintiff] attempts to compare herself must be similarly situated in all material respects." (Citation omitted; internal quotation marks omitted.) *Shumway* v. *United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "Whether a plaintiff is similarly situated to comparators is generally a question for the jury. . . . But a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." (Citation omitted; internal quotation marks omitted.) *Brown* v. *Waterbury Board of Education*, 247 F. Supp. 3d 196, 209 (D. Conn. 2017).

"That an employee's conduct need not be identical to that of another for the two to be similarly situated is also reflected in the language of *McDonnell Douglas* [*Corp.*], where the Supreme Court used the phrase 'comparable seriousness' to identify conduct that might help to support an inference of discrimination." (Internal quotation marks omitted.) *Graham* v. *Long Island Rail Road*, 230 F.3d 34, 40 (2d Cir. 2000). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of [the] plaintiff's and comparator's cases, rather than a showing that both cases are identical." Id. "What constitutes 'all material respects' . . . must be judged based on (1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Id.

"When a plaintiff attempts to satisfy the ultimate burden of proving discriminatory intent by presenting circumstantial evidence of disparate treatment, the plaintiff must show that the better-treated workers with whom the plaintiff compares herself are a representative sample of all the workers who are comparable to her. . . . She must not pick and choose [compara-

tors]." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 524 n.45. "Employees need show only a situation sufficiently similar to [their own] to support at least a minimal inference that the difference of treatment may be attributable to discrimination." (Internal quotation marks omitted.) *United Technologies Corp.* v. *Commission on Human Rights & Opportunities*, 72 Conn. App. 212, 226, 804 A.2d 1033, cert. denied, 262 Conn. 920, 812 A.2d 863 (2002).

"Nothing in *McDonnell Douglas Corp.* . . . limits the type of circumstantial evidence that may be used to establish the fourth prong of the test for a prima facie case of . . . discrimination." (Citation omitted.) *Craine* v. *Trinity College*, 259 Conn. 625, 640–41, 791 A.2d 518 (2002). "[T]he inference of discriminatory intent could be drawn in several circumstances including, but not limited to: the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." (Internal quotation marks omitted.) *Abdu-Brisson* v. *Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.), cert. denied, 534 U.S. 993, 122 S. Ct. 460, 151 L. Ed. 2d 378 (2001).

The defendant argues that the plaintiff has failed to prove a prima facie case of discrimination. For the purposes of the motion for summary judgment, the defendant does not challenge that the plaintiff has met the first three prongs of her prima facie case of discrimination. The defendant only argues that the plaintiff has not proved the fourth prong of a prima facie case for discrimination. Specifically, the defendant argues that the plaintiff's position was not filled by an individual outside the plaintiff's protected class, and the comparators given by the plaintiff are not "similarly situated" to the plaintiff. In response, the plaintiff argues that she has presented evidence that the defendant treated similarly situated male employees more favorably than the plaintiff. The plaintiff argues that her male coworkers had similar job titles and responsibilities but were paid significantly more than the plaintiff. The court agrees with the defendant.

In the present case, the plaintiff offers two comparators, Lauer and Monahan. The key question is whether Lauer and Monahan were similarly situated to the plaintiff. Lauer and Monahan are similarly situated if their positions were "substantially equal in skill, effort, and responsibility" to the plaintiff. (Internal quotation marks omitted.) *Andrus* v. *Dooney & Bourke, Inc.*, 139 F. Supp. 3d 550, 554 (D. Conn. 2015). The undisputed

facts establish that, although both men worked with the plaintiff on the data delivery team, they had different job titles and responsibilities than the plaintiff.

The plaintiff's title was implementation manager. Sam Simons, the copresident and chief operating officer for the defendant, testified at his deposition that the plaintiff's job in 2016 was to "support the customer, primarily Kiewit, and manage implementation projects or installation and implementation." Defendant's Motion for Summary Judgment, exhibit A, Simons Deposition, 15:19–22. Simons states that some of the work [of] the plaintiff overlapped with other employees but no one else had her specific duties.

The plaintiff's testimony about her job responsibilities is generally consistent with Simons' description of these responsibilities. In her deposition, the plaintiff stated that her job duties included taking out teams to job sites and supervising and overseeing them in the field; making suggestions on how to improve the products when out in the field; troubleshooting and fixing the product; working with mechanics either in person or over the phone to walk them through how to install the products; troubleshooting the software and software uploads; and other similar tasks.

Monahan stated in his deposition that he worked at the defendant for twenty years. During the relevant time period, he had worked as a project manager for about seven years. As part of his job, Monahan stated in his deposition, he helps "direct, design, install, [and] configure the asset management side of [the] product line." Defendant's Motion for Summary Judgment, exhibit A, Monahan Deposition, 4:25–5:1. Monahan further explains that, if a customer had problems with the data, the plaintiff would work on that issue, but if a customer had a hardware problem or issues with the installation or product, he would work on that, too.

Despite the plaintiff's claims to the contrary, the undisputed facts establish that the work performed by the plaintiff and Monahan was significantly different. In the plaintiff's deposition, when she was asked whether she had a similar role to Monahan, she initially answered, "[y]es, absolutely, we both sort of . . . did the exact same thing," but then further explained that, "*except Jay did more—got more involved with maybe training and process* and trouble—we both did troubleshooting, yeah." (Emphasis added.) Defendant's Motion for Summary Judgment, exhibit A, Plaintiff's Deposition, 39:4–8. In short, the plaintiff admits that her role and Monahan's were dissimilar, and considering this evidence fully and in a light most favorable to the plaintiff, there is no factual dispute that the job responsibilities of the plaintiff and Monahan were different because his tasks were more expansive.[1]

An identical conclusion must be reached regarding

Lauer. Lauer was hired in late 2015, and his job title was account manager and sales. Lauer's job was to develop new business and to provide better services to the customers. Specifically, Simons testified that Lauer's main focus was to sell products as well as to engage account management activities, which would lead to sales. Simons Deposition, 50:10–20. There can be no real or bona fide question that Lauer's job responsibilities were dramatically different from the plaintiff's tasks.

In summary, the plaintiff has not presented any evidence indicating that similarly situated male employees were treated more favorably. The plaintiff has neither discussed nor present[ed] evidence as to employees on the data delivery team other than Lauer and Monahan, and a reasonable jury could not find that the plaintiff was similarly situated to either of them. The plaintiff was obviously displeased that these two employees were working in the same data delivery team of the company and were making more money than she was, but she cannot contest this disparate treatment on the ground that they were similarly situated and that this similarity creates an inference of gender discrimination. The plaintiff's job was dissimilar to her male counterparts; therefore, her salary may be expected to be dissimilar to these individuals. Moreover, the plaintiff's position on the data delivery team was not filled by someone outside her protected class.

B

Legitimate, Nondiscriminatory Reason

Furthermore, assuming arguendo that the plaintiff established a prima facie case of discrimination, the defendant has provided a nondiscriminatory reason for the plaintiff's termination, and the plaintiff has failed to provide any sufficient evidence indicating that these reasons were pretextual.

"Once an employee has made a prima facie case, the employer may rebut by stating a legitimate, nondiscriminatory justification for the employment decision in question." *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, supra, 170 Conn. App. 90. "This, too, is a burden of production, and the defendant merely needs to state a nondiscriminatory reason. The defendant does not have to prove the absence of discrimination." *Craine* v. *Trinity College*, supra, 259 Conn. 643.

In the present case, Simons, the copresident and chief operating officer of the defendant, states that the reason for the plaintiff's termination was because the defendant's business was doing poorly, especially in the data delivery unit. The defendant has experienced layoffs and budget cuts. There were actually two sets of layoffs in 2016, one in June and one in October when the plaintiff was terminated. Simons also stated that the data delivery team was restructured. In October of 2016 when the plaintiff was laid off, four to six other people

were also laid off, and they ranged from new employees to employees who worked at the defendant for just as long as the plaintiff. The plaintiff even stated in her deposition that the company was doing poorly in 2015 and states that there were freezes on raises in 2015 and cuts in pay around the same time. Therefore, the evidence presented shows that the defendant had a legitimate, nondiscriminatory business reason for terminating the plaintiff.

C

Pretext

"[The plaintiff] now must have the opportunity to demonstrate that the [defendant's] proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." (Internal quotation marks omitted.) *DaSilva* v. *Weik*, Superior Court, judicial district of Litchfield at Torrington, Docket No. CV-17-6014797-S (*Hon. John W. Pickard*, judge trial referee) (August 27, 2019). "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. . . . Employment discrimination therefore can be proven directly, with evidence that the employer was motivated by a discriminatory reason, or indirectly, by proving that the reason given by the employer was pretextual." (Internal quotation marks omitted.) Id. "The plaintiff, in proving pretext by a preponderance of the evidence, can rely on evidence used in setting forth her prima facie case." Id. "A showing that similarly situated employees belonging to a different . . . group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, [nondiscriminatory] reason for the adverse job action was a pretext for discrimination." *Graham* v. *Long Island Rail Road*, supra, 230 F.3d 43.

The plaintiff here presents two insufficient reasons to support her claim that the defendant's reason for her termination is pretextual: (1) the plaintiff made far less than her fellow male employees; and (2) Simons' characterization of his employment relationship with the plaintiff is different in his deposition than his testimony in another civil action involving the defendant.

First, the plaintiff argues that she made far less than her male counterparts. Based on the deposition testimony, Lauer made around $125,000 in addition to commission in 2016, Monahan made between $100,000 to $115,000, and the plaintiff made between $88,000 to $92,000. As discussed above, the plaintiff was not a salesperson, nor was she a project manager; therefore, it may be both expected and reasonable that her pay

would be different from these other employees. Simply because they all worked on the data delivery team does not mean, as the plaintiff insists, that their pay should be similar to her pay, particularly when their job descriptions differed, as previously discussed. Therefore, the fact that the plaintiff was paid less than these male employees does not show that the defendant's reason for the plaintiff's termination is pretextual.

Second, the plaintiff contends that the pretextual nature of the defendant's reason for her termination can be found in Simons' differing explanations for her termination. However, a careful review of his testimony, even in the light most favorable to the plaintiff, does not establish any factual basis to support this claim.

In Simons' deposition, he consistently states that the reason for the plaintiff's termination was due to the business doing poorly and a restructuring of the data delivery team. He also characterizes his relationship with the plaintiff as being good in the beginning of her employment, but [that it] then turned negative after she moved to New Hampshire in 2011. He explains that he ignored or tolerated the plaintiff's negative behavior in the workplace because she worked hard and did an overall good job. The plaintiff contends that, in Simons' testimony in a separate civil case, he states that the reason for the termination was due to her behavior.[2] The court can find no bona fide factual basis for this contention. In his trial testimony, Simons again states that the cause of the plaintiff's termination was due to a change in business. He also testifies that his relationship with the plaintiff became negative after she moved to New Hampshire. His entire trial testimony about the plaintiff is consistent with his deposition testimony. Even on a motion for summary judgment, the plaintiff must present some factual basis to support her claims and cannot rely solely on naked claims or arguments unsupported by any actual evidence or at least some evidence from which reasonable, supportive inferences may be made. The plaintiff has failed to make this showing here and, in turn, has failed to show that there is any genuine issue of material fact regarding whether the defendant's explanation for her termination is pretextual.

## II

### RETALIATION

The second count of the plaintiff's complaint alleges that the defendant terminated her in retaliation for her complaining about the gender discrimination in the workplace and the pay disparity between men and women at the company. The defendant essentially argues that the plaintiff's retaliation claim fails as a matter of law because of the long period of time between her complaints and her termination. In response, the plaintiff contends that the defendant's

argument raises material issues of disputed facts which cannot be resolved on motion. The court agrees with the defendant.

"Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas* [*Corp.*] . . . ." *Kwan* v. *Andalex Group LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The plaintiff must first establish a prima facie case of retaliation. "To establish a prima facie case of retaliation, an employee must show (1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." (Internal quotation marks omitted.) *Samakaab* v. *Dept. of Social Services*, Superior Court, judicial district of Hartford, Docket No. CV-15-6056335-S (March 10, 2016) (reprinted at 170 Conn. App. 54, 62, 173 A.3d 1007), aff'd, 178 Conn. App. 52, 173 A.3d 1004 (2017).

"Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, [nondiscriminatory] reason existed for its action. . . . If the employer demonstrates a legitimate, nondiscriminatory reason, then [t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." (Citation omitted; internal quotation marks omitted.) *Summa* v. *Hofstra University*, 708 F.3d 115, 125 (2d Cir. 2013).

In the present case, the plaintiff's claim for retaliation is based on her asking for a pay increase after discovering that some male employees made more money than she did at the defendant. The defendant argues that the only prong of the prima facie case for retaliation that is at issue is the fourth prong where the plaintiff has to prove a causal connection between the protected activity and the adverse employment action. The following additional information is necessary for the determination of the retaliation claim.

The plaintiff first spoke to Simons about a pay raise to match her male counterparts in late 2015. Simons at that time stated that he would look at the salaries of the data delivery team to see if anything needed to be adjusted. The plaintiff later brought up raising her salary in April of 2016. The plaintiff was terminated in October of 2016. Between the last time the plaintiff spoke to Simons about her salary and her termination there was a round of layoffs in June of 2016. Six months passed between the last time the plaintiff spoke to Simons about her salary and when she was terminated, and about a year passed between when she spoke to Simons about the pay differences and her termination.

The plaintiff argues that the six months between

when she spoke to Simons about her salary and when she was terminated are sufficient to establish causation and to establish a prima facie case of retaliation. "[T]he temporal proximity between [the] two events as circumstantial evidence of causation . . . standing alone, is insufficient." *Dixon* v. *International Federation of Accountants*, 416 Fed. Appx. 107, 110 (2d Cir. 2011). "Moreover, Second Circuit precedent makes clear that the relevance of temporal proximity to the question of whether there is a causal nexus between a plaintiff's protected activity and the defendant's allegedly retaliatory action will depend on the facts and circumstances of each particular case." (Internal quotation marks omitted.) *Bryant* v. *Greater New Haven Transit District*, 8 F. Supp. 3d 115, 133 (D. Conn. 2014). The United States Supreme Court has stated that the two events must be " 'very close' " and that a proximity of three months or more is insufficient where the court is solely relying on temporal proximity. *Clark County School District* v. *Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). Therefore, on the basis of this precedent, the plaintiff has not established a prima facie case for retaliation, so the burden does not shift to the defendant. Because there is no genuine issue of material fact on whether the plaintiff has established a prima facie case of retaliation, the defendant's motion for summary judgment as to the plaintiff's retaliation claim must be granted.

## CONCLUSION

For these reasons, the defendant's motion for summary judgment is granted.

* Affirmed. *Luth* v. *OEM Controls, Inc.*, 203 Conn. App.     ,     A.3d (2021).

[1] As another example, the plaintiff was also asked whether Luke Manney, another male sales employee who was receiving commissions for sales, had essentially the same role that she did, to which she replied, "[n]o, the same as supposedly [Lauer]." Defendant's Motion for Summary Judgment, exhibit A, Plaintiff's Deposition, 77:5–9. The answer to this question also indicates that the plaintiff had a different role than Lauer.

[2] The plaintiff attaches the full testimony of Simons at this trial to her supplemental objection to the defendant's motion for summary judgment (#130).