******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## APPENDIX

## UKTI PHADNIS *v.* GREAT EXPRESSION DENTAL CENTERS OF CONNECTICUT, P.C.*

Superior Court, Judicial District of Hartford
File No. CV-13-6042588

Memorandum filed January 26, 2015

*Proceedings*

Memorandum of decision on defendant's motion for summary judgment. *Motion granted.*

*Michael T. Petela, Jr.*, for the plaintiff.

*Brian C. Hoeing, Craig A. Redinger*, pro hac vice, and *Jeffrey D. Wilson*, pro hac vice, for the defendant.

*Opinion*

ELGO, J. Before this court is a motion for summary judgment filed by the defendant, Great Expression Dental Centers of Connecticut, P.C. The plaintiff, Ukti Phadnis, is a dentist who was terminated from the employ of the defendant on August 16, 2012, and commenced this action on May 31, 2013. In the first three counts of her amended complaint, the plaintiff alleges violations of General Statutes § 46a-51 et seq., the Connecticut Fair Employment Practices Act (CFEPA). Specifically, the plaintiff alleges her termination was the result of discrimination based on the plaintiff's pregnancy and that her termination was a result of unlawful retaliation. In the remaining counts, the plaintiff further alleges, with respect to her employment contract with the defendant, breach of contract, breach of implied contract, and breach of the covenant of good faith and fair dealing. For the reasons outlined below, this court grants summary judgment as to all counts.

The amended complaint alleges the following facts. The plaintiff, a female, was employed by the defendant as a dentist in its East Windsor office from December 12, 2011, through her termination on August 16, 2012. In May, 2012, the plaintiff notified her employer that she was pregnant and that her doctor had placed restrictions on her exposure to X ray radiation. Further, in May, 2012, the plaintiff began to suffer from morning sickness that often required her to be late for work. To address her tardiness, the plaintiff met with her supervisor, Dr. Paul Kim, in May, 2012, to arrange for an adjustment to her schedule, which would allow her to arrive at 8:30 a.m. instead of 8 a.m. Dr. Kim and the plaintiff again met in mid-June to discuss maintaining her late start time, which Dr. Kim did not oppose. Then, in mid-July, aware of the scheduling problems arising from her morning sickness-induced tardiness, the plaintiff requested to be transferred to the defendant's Manchester office where additional dentists were on staff to assist with coverage in the event she was late to work. Dr. Kim agreed to her transfer.

During this time, the plaintiff also alleges, she brought to the defendant's attention its discriminatory application of disciplinary policies in regard to two other employees in the office. Despite a good work record, positive feedback, and only one patient complaint during her tenure, the plaintiff was terminated on August 16, 2012. The defendant's stated reasons for the termination were as follows: (1) the plaintiff's inability to maintain the schedule of the office, which had been brought to the plaintiff's attention twice prior; (2) complaints from staff and patients concerning her performance; and (3) unprofessional interactions with staff.

## DISCUSSION

"Summary judgment is a method of resolving litiga-

tion when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012). "Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citation omitted; internal quotation marks omitted.) *Vendrella* v. *Astriab Family Ltd. Partnership*, 311 Conn. 301, 313, 87 A.3d 546 (2014).

"As the party moving for summary judgment, the [movant] is required to support its motion with supporting documentation, including affidavits." *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 796, 653 A.2d 122 (1995). Likewise, "[t]he existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Emphasis omitted; internal quotation marks omitted.) *Walker* v. *Dept. of Children & Families*, 146 Conn. App. 863, 870, 80 A.3d 94 (2013), cert. denied, 311 Conn. 917, 85 A.3d 653 (2014). "Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]." (Internal quotation marks omitted.) *Marinos* v. *Poirot*, 308 Conn. 706, 712, 66 A.3d 860 (2013).

### COUNT ONE

The plaintiff alleges in count one of her amended complaint that the defendant's stated reason for her termination, chronic tardiness, was a pretext for unlawful discrimination based on her pregnancy. Specifically, the plaintiff claims that the defendant discriminated against her on the basis of her pregnancy in violation of § 46a-60 (a) (1) and (7). Section 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (1) [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual . . . because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin,

ancestry, present or past history of mental disability, intellectual disability, learning disability or physical disability . . . ." Under CFEPA, " '[p]hysically disabled' refers to any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness . . . ." General Statutes § 46a-51 (15).

Although the plaintiff has cursorily referenced the previously mentioned provision, she has not established nor adequately briefed a claim that her cause of action supports discrimination based on disability. Moreover, neither pregnancy nor morning sickness is recognized as a disability under these provisions.[1] Therefore, to the extent that the plaintiff has made a claim under this provision, this court considers it abandoned.

As to the plaintiff's claims regarding § 46a-60 (a), the provision states in pertinent part: "It shall be a discriminatory practice in violation of this section . . . (7) [f]or an employer, by the employer or the employer's agent: (A) To terminate a woman's employment because of her pregnancy; (B) to refuse to grant to that employee a reasonable leave of absence for disability resulting from her pregnancy . . . (E) to fail or refuse to make a reasonable effort to transfer a pregnant employee to any suitable temporary position which may be available in any case in which an employee gives written notice of her pregnancy to her employer and the employer or pregnant employee reasonably believes that continued employment in the position held by the pregnant employee may cause injury to the employee or fetus . . . ."

With respect to employment discrimination claims, our Supreme Court has held that "we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008). "In defining the contours of an employer's duties under our state antidiscrimination statutes, we have looked for guidance to federal case law interpreting Title VII of the Civil Rights Act of 1964, the federal statutory counterpart to § 46a-60." *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 164, 717 A.2d 1254 (1998).

To determine whether a plaintiff has established a prima facie claim for discrimination pursuant to § 46a-60 (a) (1), the court employs the burden shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802–804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). See *Dept. of Transportation* v. *Commission on Human Rights & Opportunities*, 272 Conn. 457, 463 n.9, 863 A.2d 204 (2005) ("We note that the analytical framework set forth by the United States Supreme Court in *McDonnell Douglas Corp.* . . . and its progeny is used to determine

whether a complainant may prevail on a claim of disparate treatment under our state law"). Under the *McDonnell Douglas Corp.* analysis, "the employee must first make a prima facie case of discrimination. The employer may then rebut the prima facie case by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision was actually motivated by illegal discriminatory bias." (Internal quotation marks omitted.) *Perez-Dickson* v. *Bridgeport*, 304 Conn. 483, 513, 43 A.3d 69 (2012).

"The burden of establishing a prima facie case [of discrimination] is a burden of production, not a burden of proof, and therefore involves no credibility assessment by the fact finder. . . . The level of proof required to establish a prima facie case is minimal and need not reach the level required to support a jury verdict in the plaintiff's favor." (Internal quotation marks omitted.) Id., 513. "In order to establish a prima facie case, the [plaintiff] must prove that: (1) [she] is in the protected class; (2) [she] was qualified for the position; (3) [she] suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." (Internal quotation marks omitted.) *Jacobs* v. *General Electric Co.*, 275 Conn. 395, 400, 880 A.2d 151 (2005). In addition to proffering direct evidence of discrimination with respect to the fourth prong, "a litigant may present circumstantial evidence from which an inference may be drawn that similarly situated individuals were treated more favorably than she was." *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 514.

The defendant argues that the plaintiff has failed to proffer evidence that raises an inference of discriminatory animus in its decision to terminate the plaintiff's employment. The defendant contends that there is no evidence the plaintiff was treated differently than non-pregnant employees and, further, that it has provided a legitimate, nondiscriminatory reason for her termination. Additionally, the defendant asserts that the plaintiff misinterpreted the statute in claiming that she was entitled to a transfer. The plaintiff's request for transfer was for her own convenience and did not give rise to statutorily protected action under § 46a-60 (a) (7) (E), which provides for transfer only when there is a reasonable belief that continued employment may cause injury to the employee or fetus.

In her objection, the plaintiff claims that the defendant's stated reasons regarding her termination were related to her morning sickness, which was caused by her pregnancy. Moreover, the plaintiff argues that there is temporal evidence that gives rise to an inference of discrimination in the timing of her termination, which was four days prior to her transfer, two weeks after

the discussion regarding the transfer, two months after her initial request for a delayed start time, and three months after her radiation restriction was conveyed to the defendant.

The plaintiff then argues, in light of the defendant's allegedly discriminatory action, the defendant's proffered legitimate reason for her termination is nonsensical, as the plaintiff's pregnancy and her altered schedule were both temporary, dentists in the defendant's practice had flexible schedules, there were no rigid disciplinary policies regarding tardiness in place, no communication of discipline for her alleged tardiness, and the defendant commonly permitted adjusted schedules. Finally, the plaintiff argues the transfer request should have been accommodated, as her commute to work, where she was often forced to pull over to vomit as a result of her morning sickness, did in fact put her and her fetus in danger.

There appears to be no disagreement that the plaintiff was a member of a protected class, was qualified as a dentist, and suffered an adverse employment action through her termination. In support of her assertions of the defendant's discriminatory animus, however, the plaintiff claims to have direct as well as indirect evidence. In her brief, for example, the plaintiff attempts to underscore aspects of Dr. Kim's testimony as manifesting direct evidence of a discriminatory animus. Although the plaintiff bears only the burden of production in making a prima facie case, having reviewed those portions of the transcript, the court concludes that the plaintiff's attempt to create a material issue of fact actually amounts to a distortion of the evidence. This court's thorough review of the evidence reveals a persistent, and undisputed, issue with the plaintiff's tardiness.

Nor does the plaintiff proffer any evidence which can support an inference of discriminatory animus or motive based on the plaintiff's pregnancy. The plaintiff does not point to any instances where similarly situated individuals were treated more favorably than she was. In fact, the plaintiff makes no mention of any nonpregnant employees who were allowed to be chronically tardy without discipline. The plaintiff appears to rely solely on the argument that her tardiness was due to her pregnancy and morning sickness, and, therefore, her termination for tardiness was only because she was pregnant. In the absence of evidence, direct or circumstantial, from which an inference may be drawn that similarly situated individuals were treated more favorably than the plaintiff, the court cannot determine that the plaintiff's termination took place under circumstances permitting an inference of discrimination. As a result, the plaintiff has failed to make out a prima facie case of discrimination.

Even assuming arguendo that the plaintiff has made out a prima facie case, summary judgment is still war-

ranted. Once an employee has made a prima facie case, the employer may rebut by stating a legitimate, nondiscriminatory justification for the employment decision in question. The employee then must demonstrate that the reason proffered by the employer is merely a pretext and that the decision was actually motivated by illegal discriminatory bias. *Perez-Dickson* v. *Bridgeport*, supra, 304 Conn. 513. As the plaintiff herself has pointed out, "the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin* v. *Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995).

The plaintiff has not shown that her pregnancy was a motivating factor behind her termination. In addition to exacerbating factors concerning the plaintiff's strained and difficult relations with other employees, the evidence establishes that the defendant's ongoing, persistent concern was that the plaintiff's chronic, daily tardiness was severely affecting its patients and the dental practice.

The defendant provided detailed exhibits establishing reports of repeated chronic tardiness even after the defendant provided the plaintiff a later start time, including e-mails from the office manager discussing the plaintiff's chronic tardiness and its impact on waiting patients, and e-mails from Dr. Kim to the plaintiff noting that despite the accommodation, the plaintiff must be on time for every patient because start times are strictly enforced for all employees. Dr. Kim's testimony specified that many of the practice's patients are nonsalaried, blue collar workers for whom early morning appointments are critical so that they suffer less time away from their jobs. The plaintiff failed to provide any contradictory evidence, and even acknowledged in her own deposition that chronic tardiness is a "practice killer." Such evidence clearly amounts to legitimate, nondiscriminatory reasons for the plaintiff's termination.

The plaintiff attempts to rebut the defendant's purported concern with her tardiness by asserting that all employees, including she, enjoyed a flexible schedule. The defendant, however, does not dispute that it offered the plaintiff flexibility in her schedule. In fact, per the plaintiff's request for an accommodation, the defendant approved a late start for the plaintiff until such time as her morning sickness became more manageable. The evidence makes clear, however, that the opportunity to have a flexible schedule, such as allowing the plaintiff to begin her workday at 8:30 a.m. instead of 8 a.m., or allowing her a workday that began at 11 a.m. and ended at 7 p.m., cannot be equated with being late nearly every day.

The defendant also points to evidence of the plain-

tiff's personnel problems with other members of the office staff as a reason for her termination. While there are indications that prior to her termination, the plaintiff was considered a good dentist and the plaintiff's interactions with patients and staff members "met standards," further evidence reveals that the plaintiff had an ongoing dispute with another member of the office, Gabby, that resulted in the plaintiff threatening to resign if Gabby was not terminated. As a result of this disagreement, the plaintiff forced the defendant to transfer Gabby to the Manchester office, then, as was noted during short calendar, when the plaintiff was preparing to transfer to Manchester herself, she demanded that Gabby again be transferred before the plaintiff began work at the Manchester office. The plaintiff provided no evidence to create a genuine issue of material fact with respect to this issue. Therefore, even assuming that the plaintiff has set forth a prima facie case of discrimination, she cannot, and has not, rebutted the defendant's legitimate, nondiscriminatory justification for her termination. There is simply no evidence from which this court can infer, that in the absence of the plaintiff's tardiness, the defendant would have terminated the plaintiff due to her pregnancy.

The parties also appear to argue over whether the defendant violated § 46a-60 (a) (7) in failing to make a reasonable effort to transfer the plaintiff and instead terminating her employment. As noted previously, § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (7) . . . (E) . . . to fail or refuse to make a reasonable effort to transfer a pregnant employee to any suitable temporary position which may be available in any case in which an employee gives written notice of her pregnancy to her employer and the employer or pregnant employee reasonably believes that continued employment in the position held by the pregnant employee may cause injury to the employee or fetus . . . ."

The plaintiff does not claim that her request to transfer to Manchester was a result of a reasonable belief that her current employment in East Windsor would cause injury to herself or her fetus. Instead, the plaintiff claims that her reasonable belief of injury arose from her commute to work during which she was forced to pull over and vomit on the side of the road. However, even if this claim met the requirements of § 46a-60 (a) (7) (E), there is no evidence that a transfer from one office to another would alleviate the potential for injury since the plaintiff would still be required to commute to work each day. In fact, the plaintiff's rationale for requesting the transfer is premised on her understanding that there were additional dentists in the Manchester office who could provide coverage for her if she was late. The accommodation, therefore, has nothing to do with the risk of injury to the plaintiff or her fetus since the plaintiff's potential to experience nausea was pre-

sumably present whether she was commuting to East Windsor or Manchester. Indeed, the plaintiff does not dispute that while the defendant approved her request to transfer to the Manchester office and had rescheduled her start times to accommodate her pregnancy, the defendant never approved of and consistently took issue with the plaintiff's tardiness. In other words, the plaintiff's argument is ultimately that she was entitled to arrive late, irrespective of the defendant's accommodation of her schedule or agreement to transfer to a different office.

Moreover, § 46a-60 (a) (7) (E) finds a discriminatory practice where the employer fails or refuses to make a reasonable effort to transfer the employee, but, in the instant case, the employer did allow for the transfer. The defendant had approved the transfer and was in the process of orchestrating the transfer when the plaintiff's personnel problems again surfaced. The plaintiff refused to begin work at Manchester until such time as Gabby, the employee the plaintiff forced to be transferred earlier, was again transferred at the plaintiff's demand. The plaintiff has provided no evidence that creates a genuine issue of material fact as to the defendant's failure or refusal to make a reasonable effort to transfer the plaintiff.

Finally, in her objection to the motion for summary judgment, the plaintiff references a violation of § 46a-60 (a) (7) (B) for failure of the defendant to provide the plaintiff with a "reasonable leave of absence for disability from pregnancy . . . ." The plaintiff has proffered no evidence that she made a request for a leave of absence, nor did she assert a violation of § 46a-60 (a) (7) (B) in her complaint. Therefore, the court does not address this statutory provision.

The defendant's motion for summary judgment is granted as to count one.

### COUNT TWO

In count two of the amended complaint, the plaintiff alleges that her termination was the result of retaliation for placing medical restrictions related to her pregnancy on her employment. Specifically, the plaintiff argues that the defendant violated § 46a-60 (a) in its decision to terminate her. The statute provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) [f]or any . . . employer . . . to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ." General Statutes § 46a-60 (a) (4).

"To establish a prima facie case of retaliation, a plaintiff must show four elements: (1) that [s]he participated in a protected activity; (2) that the defendant knew of

the protected activity; (3) an adverse employment action against [her]; and (4) a causal connection between the protected activity and the adverse employment action." *Ayantola* v. *Board of Trustees of Technical Colleges*, 116 Conn. App. 531, 536, 976 A.2d 784 (2009).

To determine whether a plaintiff can prevail on a claim of retaliation, under state law, the court again employs the burden shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, supra, 411 U.S. 802. See *Zboray* v. *Wal-Mart Stores East, L.P.*, 650 F. Supp. 2d 174, 179 (D. Conn. 2009) (applying the burden shifting analysis to a retaliation claim under CFEPA); *Bracey* v. *Northeast Utilities Service Co.*, Superior Court, judicial district of Hartford, Docket No. CV-12-6027883-S, 2013 Conn. Super. LEXIS 2521, *38 (November 1, 2013) (*Huddleston, J.*) ("[b]ecause Connecticut's courts look to federal precedent in interpreting CFEPA, claims of retaliation under § 46a-60 [a] [4] are evaluated under the *McDonnell Douglas* [*Corp.*] burden-shifting paradigm").

While the plain language of the statute lacks any terms which would bring the act of seeking a reasonable accommodation within its protective purview, numerous United States federal courts have held that requesting a reasonable accommodation is a protected activity under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. See *Payne* v. *PSC Industrial Outsourcing, Ltd. Partnership*, United States District Court, Docket No. 3:13-CV-00355 (VLB), 2013 U.S. Dist. LEXIS 180941 (D. Conn. 2013); see also *Wright* v. *CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003). However, in contrast, the few Connecticut courts that have considered the issue in regard to CFEPA have concluded that § 46a-60 (a) (4) does not protect an employee who makes a request for a reasonable accommodation. See *Sheehy* v. *Big Y Foods, Inc.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X06-CV-12-6014260-S (October 31, 2012) (*Agati, J.*) (54 Conn. L. Rptr. 887, 889) ("The issue raised . . . is whether requesting reasonable accommodation for one's own disabilities qualifies as 'oppos[-ing] [a] discriminatory employment practice' for purposes of alleging retaliation under § 46a-60 [a] [4]. It does not.").

In count two, the plaintiff alleges only that the stated reasons for her termination were a pretext for unlawful retaliation because the plaintiff "provid[ed] medical restrictions related to her pregnancy." The plaintiff's only reference to medical restrictions appears to be her restriction on X ray radiation exposure. The plaintiff fails to allege further facts indicating that this request was taken into consideration when the defendant made the decision to terminate her employment, and as noted previously, pregnancy is not classified as a disability

requiring a reasonable accommodation under CFEPA. Because the plaintiff fails to allege a prima facie case of retaliation, the defendant is entitled to summary judgment as a matter of law on count two.

### COUNT THREE

The plaintiff claims in count three of her amended complaint that her termination was the result of unlawful retaliation for opposing age discrimination in violation of § 46a-60 (a) (4). The plaintiff alleges that she questioned the defendant's office manager on four separate occasions about a possible age discrimination practice occurring in the office. Specifically, the plaintiff alleges an older employee was disciplined for unprofessional conduct, while a younger employee, who had engaged in allegedly worse conduct, was not disciplined. After the office manager appeared to disregard the plaintiff's complaints, the plaintiff spoke with her supervisor, Dr. Kim, to inform him that policies were not being applied fairly and equally among older and younger employees. The amended complaint then alleges that Dr. Kim stated he did not manage staff related issues, and that the office manager was aware of her complaints and would take appropriate action. The plaintiff was terminated a week later.

As detailed in the previous count, to prevail on a claim of retaliation, the plaintiff must first establish a prima facie case of retaliation. Only upon a showing of a prima facie case does the burden shift to the defendant to proffer a legitimate, nonretaliatory reason for the adverse employment action.

In the present case, while an alleged report of an employer's discriminatory actions is a protected activity under § 46a-60 (a) (4), the plaintiff has failed to establish a prima facie case of retaliation. The only evidence indicating that the plaintiff's alleged complaints of age discrimination played a role in her termination come from the plaintiff's own self-serving deposition in which the plaintiff claims she believes the complaints contributed to the termination decision. While in her deposition the plaintiff makes reference to numerous e-mails and phone calls to Dr. Kim regarding the age discrimination allegations, she fails to provide any evidence supporting these assertions.

Our courts have long held that summary judgment may not be based on *or opposed* by inadmissible evidence of self-serving, unsubstantiated speculation or conclusory statements or denials. *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 582–83, 687 A.2d 111 (1996); see also *Texidor* v. *Thibedeau*, Superior Court, judicial district of Hartford, Docket No. CV-13-6040518-S, 2014 Conn. Super. LEXIS 2283 (September 10, 2014) (*Peck, J.*). Therefore, in the absence of any concrete evidence supporting the claim, the plaintiff has failed to establish a prima facie case of retaliation under § 46a-

60 (a) (4), and summary judgment should be granted as to count three.

## COUNTS FOUR, FIVE AND SIX

The final three counts of the plaintiff's amended complaint arise under contract law and allege claims of breach of contract, breach of implied contract, and breach of the covenant of good faith and fair dealing. In the defendant's motion for summary judgment, it argues that the plaintiff's contract claims are barred by the parties' Agreement to Assert Claims Timely (AACT) provision of the employee handbook. Thus, as a preliminary matter, the court must address whether the agreements between the parties bar the remaining counts.

The AACT provision provides in relevant part, "It is mutually understood by myself and Great Expressions-NDG, and agreed to in this document, that whenever there is a dispute concerning my employment, it is in the best interests of everyone that the dispute be resolved quickly. For that reason, I understand and agree that any action or suit against the Great Expressions-NDG arising out of my employment . . . must be brought within six (6) months of the event giving rise to the claims or be forever barred . . . ." The defendant contends that such provision has effectively barred the plaintiff's contract claims, as they were filed over a year after her termination and the alleged breach of contract.

In response, the plaintiff claims that her employment agreement is expressly carved out from the handbook acknowledgment because the acknowledgment states, "this handbook is not a contract of employment (Dentists' and Specialists' employment terms and conditions are outlined in their individual employment agreements)." It appears that under the plaintiff's interpretation, because she was a contract employee, the handbook acknowledgment and AACT is not an enforceable agreement between the parties.

"In determining whether a contract is ambiguous, the words of the contract must be given their natural and ordinary meaning. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 102–103, 84 A.3d 828 (2014).

The plaintiff signed her employment contract on November 28, 2011, and then, on December 1, 2011, she signed the handbook acknowledgment agreement that contained the disputed AACT provision. The clear terms of her employment contract state, "no modifica-

tion or addition hereto or waiver or cancellation or any provision shall be valid *except by a writing signed by the party charged therewith.*" (Emphasis added.) Thus, her agreement, which was in writing and signed by the plaintiff, to limit her filing of an action or claim against the defendant within six months of the event giving rise to the claims, is valid and enforceable. The plaintiff's contract claims in counts four, five, and six are barred, and the defendant's motion for summary judgment is granted.

\* Affirmed. *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, 170 Conn. App. 79,      A.3d      (2017).

[1] There is no case law in Connecticut that defines pregnancy or morning sickness as a disability. Because the term "chronic" has no statutory definition, the Superior Court has relied on the dictionary definition of chronic in analyzing a physical disability claim under CFEPA. *Commission on Human Rights & Opportunities* v. *Hartford*, Superior Court, judicial district of New Britain, Docket No. CV-09-4019485-S (October 27, 2010) (*Cohn, J.*) (50 Conn. L. Rptr. 750, 757) (relying on the dictionary definition of chronic); *Gilman Bros. Co.* v. *Commission on Human Rights & Opportunities*, Superior Court, judicial district of Hartford, Docket No. CV-95-0536075, 1997 Conn. Super. LEXIS 1311, \*8–\*10 (May 13, 1997) (*McWeeny, J.*) (relying on the dictionary definition of chronic to find that carpal tunnel qualifies as a physical disability under CFEPA). Under the limited analysis regarding pregnancy and physical disability, courts have held that pregnancy, or even most pregnancy related ailments, are not chronic and thus are not classified as a physical disability under CFEPA. See *Kucharski* v. *Cort Furniture Rental*, 536 F. Supp. 2d 196, 201–202 (D. Conn. 2007), rev'd in part on other grounds after reconsideration by *Kucharski* v. *Cort Furniture Rental*, 594 F. Supp. 2d 207 (D. Conn. 2008) (pregnancy complications that required an employee to be out of work for two months are not a disability under CFEPA), aff'd, 342 Fed. Appx. 712 (2d Cir. 2009).