******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LPP MORTGAGE LTD. *v.* UNDERWOOD TOWERS LIMITED PARTNERSHIP ET AL.
## (AC 43542)
## (AC 43575)

Cradle, Alexander and Lavine, Js.

*Syllabus*

The substitute plaintiff sought to foreclose a commercial mortgage on certain real property of the defendant U Co., which had leased the property from the defendant city of Hartford to construct an apartment complex. After U Co. failed to make payments on the loan, it executed two more mortgages, each of which was secured by a separate note. When the notes and mortgages were thereafter sold to the substitute plaintiff, it was provided with an affidavit in which the seller averred that one of the original notes had been lost. U Co. and its management agent, the defendant C Co., claimed that the substitute plaintiff lacked standing to foreclose the mortgage because it could not produce the lost note and, thus, that the trial court lacked subject matter jurisdiction. The trial court determined that, pursuant to *New England Savings Bank* v. *Bedford Realty Corp.* (238 Conn. 745), the substitute plaintiff's failure to produce the lost note did not deprive it of standing to foreclose the mortgage. The court thereafter rendered judgment of strict foreclosure. On appeal to this court, U Co. and C Co. claimed, inter alia, that the trial court erred in concluding that the plaintiff had standing to foreclose the mortgage, and the city claimed that, in making that determination, the trial court improperly relied on *New England Savings Bank*, which, the city contended, had been overruled sub silentio or improperly decided. *Held* that the judgment of the trial court was affirmed, and because that court aptly addressed the arguments raised by U Co. and C Co., this court adopted the trial court's thorough and well reasoned decision as a proper statement of the facts and applicable law on the issues; moreover, the city's unpreserved claim that the trial court improperly relied on *New England Savings Bank* or, in the alternative, that that case was wrongly decided, was unavailing, as this court declined to presume that our Supreme Court intended to overrule its long-standing precedent in the absence of any clear indication that it intended to do so, and, as an intermediate appellate court, this court could not overrule or reconsider the decisions of our Supreme Court.

Argued April 6—officially released July 20, 2021

*Procedural History*

Action to foreclose a mortgage on certain of the named defendant's real property, and for other relief, brought to the Superior Court in the judicial district of Hartford and transferred to the Complex Litigation Docket; thereafter, LPP Mortgage, Inc., was substituted as the plaintiff; subsequently, the case was tried to the court, *Miller, J.*; thereafter, the court, *Hon. Patty Jenkins Pittman*, judge trial referee, granted the motion for a mistrial filed by the named defendant et al.; subsequently, the court, *Schuman, J.*, denied the motion to dismiss filed by the named defendant et al. as to the defendant CDC Management Company; thereafter, the court, *Schuman, J.*, denied the motion to dismiss filed by the named defendant et al., granted in part the substitute plaintiff's motion for summary judgment and granted in part the motion for summary judgment filed by the named defendant et al.; subsequently, the court,

*Schuma*n, *J.*, rendered judgment of strict foreclosure, from which the named defendant et al. and the defendant city of Hartford filed separate appeals with this court. *Affirmed.*

*Richard P. Weinstein*, for the appellants in Docket No. AC 43542 (named defendant et al.).

*David S. Hoopes*, with whom was *Jay R. Lawlor*, for the appellant in Docket No. AC 43575 (defendant city of Hartford).

*Wesley W. Horton*, with whom were *Thomas W. Witherington* and *J. David Folds*, pro hac vice, and, on the brief, *Nicholas P. Vegliante* and *John G. McJunkin*, pro hac vice, for the appellee in Docket Nos. AC 43542 and AC 43575 (substitute plaintiff).

*Opinion*

CRADLE, J. In these related appeals arising from a commercial foreclosure action, the defendants Underwood Towers Limited Partnership (Underwood), CDC Management Corporation (CDC), and the city of Hartford (city),[1] appeal from the judgment of the trial court, rendered after a court trial, in favor of the substitute plaintiff, LPP Mortgage, Inc.[2] In Docket No. AC 43542, Underwood and CDC claim that the trial court erred in concluding that the plaintiff had standing to foreclose the mortgage because it was not entitled to enforce the promissory note; in relying on the provisions of a regulatory agreement between Underwood and the United States Department of Housing and Urban Development (HUD) to conclude that Underwood had defaulted on the mortgage, and in calculating the amount of the debt owed to the plaintiff; in concluding that foreclosure was an equitable remedy in this case; in awarding monetary damages in addition to the judgment of strict foreclosure; and in awarding damages to the plaintiff under a theory of unjust enrichment. In Docket No. AC 43575, the city challenges the trial court's conclusion that the plaintiff had standing to foreclose on the ground that *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 680 A.2d 301 (1996) (*Bedford Realty*), the Supreme Court case on which the trial court relied in so concluding, has been overruled sub silentio, or, in the alternative, was improperly decided. We affirm the judgment of the trial court.

The following facts, set forth by the trial court in its memorandum of decision, provide the relevant background to these appeals. In 1985, Underwood entered into a ground lease with the city for approximately six acres of property on which Underwood would construct Park Place Towers, a high-rise apartment complex (project). The project was financed by Underwood with a $35 million mortgage that was insured by HUD. To obtain that mortgage insurance, Underwood entered into a regulatory agreement with HUD that governed the management of the project and regulated the use of its revenues. In 1990, after Underwood failed to make payments on the loan, it executed a second mortgage and a second mortgage note, Note A, in favor of HUD. Underwood defaulted again in 1996 and executed an additional mortgage note with HUD, Note B.

In 2002, HUD sold the second mortgage to PAMI Mid-Atlantic, LLC (PAMI). Instead of providing PAMI with the original Note B, HUD provided an affidavit averring that the note had been lost (lost note affidavit). In 2005, PAMI assigned the second mortgage, along with the lost note affidavit, back to HUD. Later in 2005, HUD sold the mortgage and both notes to Beal Bank. Beal Bank, in turn, sold the mortgage and both notes to the plaintiff in 2006. Neither Beal Bank nor the plaintiff possessed the original Note B; however, both of those

transfers were accompanied by lost note affidavits for Note B.

By letters to Underwood dated March 28 and May 2, 2006, the plaintiff declared defaults on Note B, and demanded payment from Underwood in the amounts of $419,246 and $1,146,245.98, respectively. On June 14, 2006, the plaintiff notified Underwood that, because the defaults had not been cured, it had accelerated the debt, and demanded payment of the entire principal amounts due under Notes A and B—approximately $68 million.

In December, 2006, the plaintiff commenced this action. By way of its ten count, revised, second amended complaint, dated November 29, 2018, the plaintiff sought a judgment of strict foreclosure. Additionally, as to Underwood, the plaintiff sought damages for breach of contract, breach of the covenant of good faith and fair dealing, conversion, statutory theft pursuant to General Statutes § 52-564, and unjust enrichment. As to CDC, the plaintiff sought damages for unjust enrichment and fraudulent conveyance. As to both Underwood and CDC, the plaintiff sought damages for fraud and violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

On July 16, 2019, following a court trial that spanned eighteen days, and the submission of posttrial briefs, the court filed a memorandum of decision, in which it rejected the defendants' argument that the plaintiff did not have standing to foreclose the mortgage and rendered judgment of strict foreclosure. The court also ordered Underwood to pay the plaintiff $1,766,057 in damages for breach of contract and breach of the covenant of good faith and fair dealing.[3] The court ordered CDC to pay the plaintiff $408,588 in damages for unjust enrichment.[4] The court thereafter awarded the plaintiff postjudgment interest at the annual rate of 5 percent, with law days to commence on December 2, 2019. These appeals followed.

On appeal, the defendants claim that the court erred in concluding that the plaintiff had standing to commence this action and, thus, that the court improperly exercised subject matter jurisdiction over its claims. Underwood and CDC also claim that the court improperly relied on the provisions of the regulatory agreement to conclude that Underwood had defaulted on the mortgage and in calculating the amount of the debt owed to the plaintiff; erred in concluding that foreclosure was an equitable remedy in this case and in awarding monetary damages in addition to the judgment of strict foreclosure; and improperly awarded damages under a theory of unjust enrichment.

On the basis of our examination of the extensive record on appeal, and the briefs and arguments of the parties, we are persuaded that the judgment of the trial court should be affirmed. Because the court's memorandum

of decision aptly addresses the arguments raised by Underwood and CDC in AC 43542, we adopt its thorough and well reasoned decision as a proper statement of the facts and applicable law on these issues. See *LPP Mortgage Ltd.* v. *Underwood Towers Ltd. Partnership*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X03-CV-07-5007994-S (July 16, 2019) (reprinted at 205 Conn. App. 773, A.3d    ). It would serve no useful purpose for us to repeat the discussion contained therein. See *Citizens Against Overhead Power Line Construction* v. *Connecticut Siting Council*, 311 Conn. 259, 262, 86 A.3d 463 (2014); *Phadnis* v. *Great Expression Dental Centers of Connecticut, P.C.*, 170 Conn. App. 79, 81, 153 A.3d 687 (2017).

In AC 43575, the city asserts an additional argument in challenging the trial court's conclusion that the plaintiff had standing to foreclose, which the city did not raise before the trial court, and, thus, the court did not address in its memorandum of decision.[5] The city argues that the case on which the trial court relied in concluding that the plaintiff had standing, *Bedford Realty*, has been overruled sub silentio or, in the alternative, was improperly decided. We are not persuaded.

In challenging the plaintiff's standing to foreclose the mortgage, Underwood and CDC argued to the trial court that the plaintiff was not entitled to enforce Note B, pursuant to General Statutes § 42a-3-309, because it was not in possession of the note when it was lost.[6] The trial court rejected that argument, relying on *Bedford Realty* for the proposition that a mortgagee "is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both. A note and a mortgage given to secure it are separate instruments, executed for different purposes and in this [s]tate [an] action for foreclosure of the mortgage and upon the note are regarded and treated, in practice, as separate and distinct causes of action, although both may be pursued in a foreclosure suit." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 759.

In deciding *Bedford Realty*, our Supreme Court observed that, because the plaintiff had chosen to pursue the equitable action of foreclosure of the mortgage, rather than a legal action on the note, the fact that the plaintiff never possessed the lost promissory note was not fatal to its foreclosure of the mortgage. Id., 759–60. The court further held that, "whatever restrictions [General Statutes] §§ 42a-3-301 and 42a-3-309 might put upon the enforcement of personal liability based solely upon a lost note, they do not prohibit [a mortgagee] from pursuing an action of foreclosure to enforce the terms of the mortgage." Id., 760. The court reasoned: "In pursuing the remedy of strict foreclosure, [the mortgagee]

or its assignee nevertheless will have to establish the amount of the debt that [the mortgagor] owes. The loss of the note, however, does not preclude proof of the debt by other evidence [because a] note is not a debt; it is only primary evidence of a debt; and where this is lost, impaired or destroyed bona fide, it may be supplied by secondary evidence. . . . [Accordingly] [t]he loss of a . . . note alters not the rights of the owner, but merely renders secondary evidence necessary and proper. [The mortgagee] or its assignee is free to present reliable evidence other than the original promissory note to establish the amount of the debt." (Citations omitted; internal quotation marks omitted.) Id. On the basis of the foregoing reasoning in *Bedford Realty*, the trial court here concluded that the plaintiff's failure to produce the lost note did not deprive it of standing to foreclose the mortgage.

The city first argues that *Bedford Realty* has been overruled sub silentio by two subsequent Supreme Court decisions, *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 71 A.3d 492 (2013), and *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 74 A.3d 1225 (2013). The city contends that those cases "held, contrary to *Bedford* [*Realty*], that standing to foreclose a mortgage securing a note *is* governed by the [Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq.]." (Emphasis in original.) The city argues: "Though neither decision mentioned *Bedford* [*Realty*], both are necessarily inconsistent and irreconcilable with it."

It is well settled that, "absent clear indications from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been overruled sub silentio merely because its reasoning and result appear inconsistent with later cases." (Internal quotation marks omitted.) *State* v. *Berrios*, 320 Conn. 265, 286, 129 A.3d 696 (2016). This principle is founded on the notion that "[w]e are not prepared to indulge in the presumption that the Supreme Court would so cavalierly overrule . . . [its own] authority without even acknowledging that it was doing so." *State* v. *Farrar*, 7 Conn. App. 149, 154–55, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986).

Here, as the city acknowledges, neither of the cases that it cites as having overruled our Supreme Court's decision in *Bedford Realty*—*J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 307, nor *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 119—even mentions *Bedford Realty*.[7] Indeed, neither case discusses the dichotomy between a foreclosure action and an action to enforce a note. In the absence of any clear indication that our Supreme Court intended to overrule its longstanding precedent in *Bedford Realty* with either of those decisions, we decline to presume that it did so.[8]

In the alternative, the city argues that *Bedford Realty* was wrongly decided. "It is well established that this

court cannot overrule or reconsider the decisions of our Supreme Court. See *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ('Our Supreme Court is the ultimate arbiter of the law in this state. We, as an intermediate appellate court, cannot reconsider the decisions of our highest court.'); *State* v. *Fuller*, 56 Conn. App. 592, 609, 744 A.2d 931 ('[i]t is not within our function as an intermediate appellate court to overrule Supreme Court authority'), cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000)." *State* v. *Corver*, 182 Conn. App. 622, 638 n.9, 190 A.3d 941, cert. denied, 330 Conn. 916, 193 A.3d 1211 (2018). Accordingly, this argument is unavailing.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] Greystone Servicing Corporation, Inc., Mac-Gray Services, Inc., United Way of the Capital Area, Inc., and Xerox-Hartford Associates also were named as defendants. Because those defendants have not participated in this appeal, any reference herein to the defendants refers only to Underwood, CDC and the city, unless otherwise stated.

[2] LPP Mortgage, Inc., was substituted as the plaintiff on October 24, 2017. We therefore refer to it as the plaintiff in this opinion.

[3] The court also found Underwood liable for conversion but did not add those damages to the total award because they overlapped with the other damages already awarded to the plaintiff.

[4] The court previously had granted a motion for summary judgment filed by Underwood and CDC as to the plaintiff's claims for unjust enrichment as to Underwood and fraudulent conveyance as to CDC.

[5] Pursuant to the ground lease, Underwood was required to make certain payments to the city in lieu of taxes. The trial court found that Underwood was approximately $3.5 million in arrears on those payments, and that Note B was senior in priority to the debt owed to the city. The city did not participate in the trial and did not challenge the plaintiff's standing at any point prior to the court's July 16, 2019 memorandum of decision. The city first raised this issue in a motion for determination of priorities filed on September 4, 2019. The court summarily denied that motion. Because standing implicates a court's subject matter jurisdiction, which may be challenged at any time, the city's claim is properly before us and is subject to our plenary review. See *Saunders* v. *Briner*, 334 Conn. 135, 156, 221 A.3d 1 (2019).

[6] General Statutes § 42a-3-309 (a) provides: "A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process."

[7] In *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 307, the court determined that a loan servicer for the owner of legal title to a note has standing in its own right, under the UCC, to foreclose on the real property securing the note. Id., 311, 317. In *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 119, the court held that the trial court's determination that the loan servicer had standing to bring an action for foreclosure was presumptively valid on the basis of the servicer's production of documents showing that it was the holder of the note at the time the action was commenced. Id., 130–31.

[8] We note that *Bedford Realty* is not an anomaly. Our Supreme Court repeatedly has recognized and abided by the distinction between a foreclosure action and an action to enforce a note. See *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, 336 Conn. 633, 640, 249 A.3d 327 (2020); *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, 312 Conn. 662, 673, 94 A.3d 622 (2014); *New Milford Savings Bank* v. *Jajer*, 244 Conn. 251, 266–67, 708 A.2d 1378 (1998); *Wendell Corp., Trustee* v. *Thurston*, 239 Conn.

109, 116, 680 A.2d 1314 (1996); *Hartford National Bank & Trust Co.* v. *Kotkin*, 185 Conn. 579, 581, 441 A.2d 593 (1981). This court likewise has recently acknowledged that distinction. See *Castle* v. *DiMugno*, 199 Conn. App. 734, 753, 237 A.3d 731 (2020), quoting *Seven Oaks Enterprises, L.P.* v. *DeVito*, 185 Conn. App. 534, 547, 198 A.3d 88, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018). Our Supreme Court's explicit adherence to that distinction in 2014 in *JP Morgan Chase Bank, N.A.* v. *Winthrop Properties, LLC*, supra, 673, and again in 2020 in *JPMorgan Chase Bank, National Assn.* v. *Essaghof*, supra, 640, which were decided after both cases on which the city relies in arguing that *Bedford Realty* has been overruled sub silentio, would seem to dispositively refute the city's claim.